**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROBERT SUDAR,

Plaintiff,

vs.

NEVADA HAND, INC., *et al.*,

Defendants.

Case No.: 2:26-cv-02103-GMN-EJY

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Pending before the Court is the Emergency Motion for Temporary Restraining Order ("TRO"), (ECF No. 4), filed by *pro se* Plaintiff Robert Sudar. For the reasons discussed below, the Court GRANTS the Emergency Motion for Temporary Restraining Order.

## I. <u>BACKGROUND</u>

This case arises from a series of disputes between Plaintiff Robert Sudar and the management of Defendant Apache Pines Apartments, the apartment complex in which he resides. (*See generally* Compl., Ex. 1 to Motion for Leave to Proceed *in forma pauperis* ("IFP"), ECF No. 1-1). Plaintiff is a 73-year-old veteran who suffers from Chronic Obstructive Pulmonary Disease ("COPD") and post-traumatic stress disorder ("PTSD"), among other disabilities, and currently resides in Apartment unit 1115 at the Apache Pines Apartments, located at 9552 W. Tropicana Ave, Las Vegas, NV 89147. (*Id.* ¶¶ 6–10); (Mot. TRO 1:23–24, ECF No. 4). Plaintiff's current lease extends to September 30, 2026. (Compl. ¶ 7, Ex 1. to IFP). Plaintiff asserts five claims in his Complaint: (1) violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(B) against all Defendants; (2) violation of the FHA, 42 U.S.C. § 3617 against all Defendants; (3) breach of contract against Defendants Nevada Hand, Inc. and Apache Pines Apartments; (4) fraudulent inducement against Defendants Nevada Hand, Inc.,

and Apache Pines Apartments; and (5) breach of the implied warranty of habitability under Nevada Revised Statute ("NRS") 118A.290 against Defendants Nevada Hand, Inc., and Apache Pines Apartments. (*Id.* ¶¶ 41–81).

The Court summarizes here the facts underpinning Plaintiff's first, second, and third claims, which are most relevant to Plaintiff's request for injunctive relief. (*See* Order Granting IFP 2:15–3:22, ECF No. 5) (summarizing Plaintiff's complaint in full). Plaintiff alleges that in February of 2026, Apache Pines Apartments announced plans to renovate the property and stated that it would be temporarily relocating residents while renovations were completed. (Compl. ¶ 29, Ex. 1 to IFP). Plaintiff alleges that he sent an email to Defendant Brianna Hankins, the designated relocation expert, explaining that he is disabled and requesting individualized communication and assistance in managing his housing status. (*Id.* ¶¶ 30, 45). In response, Defendant Hankins allegedly dismissed Plaintiff's request, telling him to "find someone else." (*Id.* ¶ 31). Plaintiff thereafter filed a formal housing discrimination complaint with the U.S. Department of Housing and Urban Development ("HUD"), which Plaintiff alleges prompted Defendant Erica Arthur to speak with Plaintiff about his requested accommodation. (*Id.* ¶¶ 33–35). However, Plaintiff alleges that the attempted resolution with Defendant Arthur failed because she supposedly did not act in good faith. (*Id.* ¶ 35).

Concurrently, Plaintiff states that his retirement income was "abruptly cut in half." (*Id.* ¶ 36). Plaintiff requested rent abatement from Defendant Nevada Hand, Inc. given the circumstances, but his request was denied. (*Id.* ¶ 40). Plaintiff alleges that individuals from the Apache Pines Apartments have asserted that he must pack up his apartment to relocate. (*Id.* ¶¶ 41–43). Indeed, in his most recently filed Emergency Motion, Plaintiff explains that he believes his relocation is "imminent" due to ongoing renovation in adjacent apartment units. (Mot. TRO 2:1–3). Plaintiff maintains that his requests for accommodation were never meaningfully acknowledged. (Compl. ¶ 44, Ex. 1 to IFP).

Plaintiff now seeks a TRO enjoining Defendants from taking any action to relocate Plaintiff or evict him from his current apartment unit and ordering them to cease all relocation activities regarding Plaintiff. (Mot. TRO 3:2–7). Plaintiff filed his First Emergency Motion for TRO ("First Motion for TRO") alongside his Motion to Proceed *in forma pauperis*, and later filed the instant Emergency Motion for TRO.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure ("FRCP") 65 governs temporary restraining orders. Fed. R. Civ. P. 65. A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). The Court may issue a temporary restraining order if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

Alternatively, the Ninth Circuit has adopted a "sliding scale" variant of the *Winter* test, under which a party is entitled to a temporary restraining order if it demonstrates (1) "serious questions going to the merits," (2) "a likelihood of irreparable injury," (3) "a balance of hardships that tips sharply towards the plaintiff," and (4) "the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Campos v. Dyck O'Neal, Inc.*, No. 2:24-cv-01317-KJM-DB, 2024 WL 2941656, at *2 (E.D. Cal. May 10, 2024) (applying the *Cottrell* test in the temporary restraining order context). As to the first factor, the serious questions standard is "a lesser showing than likelihood of success on the

merits." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Importantly, a plaintiff need only show serious questions going to the merits of one claim to satisfy the first element of the *Cottrell* test. *See* 632 F.3d at 1139 (declining to reach remaining claims after finding "serious questions" on the merits of one claim).

## III. DISCUSSION

Plaintiff contends that he is entitled to a TRO because he is likely to succeed on the merits of his claims and will be irreparably harmed absent an injunction. (*See generally* Mot. TRO). The Court addresses each factor of the *Cottrell* test in turn.

### A. Plaintiff Has Shown Serious Questions Going to the Merits of his First Claim

Based on the briefing submitted by Plaintiff and for the reasons discussed below, the Court concludes that while Plaintiff has not shown a likelihood of success on the merits, the allegations in his Complaint raise at least serious questions going to the merits of his first claim for unlawful discrimination in violation of the FHA, 42 U.S.C. § 3604(f). The Court is not required to determine, nor does it determine in this Order, whether Plaintiff has shown serious questions going to the merits of his remaining claims. A showing of serious questions going to the merits of a single claim is sufficient if that claim supports the injunctive relief sought. *L.A.E. v. Wamsley*, 813 F. Supp. 3d 1198, 1204 n. 2 (D. Or. 2025) (citing *Cottrell*, 632 F.3d at 1139).

Plaintiff's first claim asserts a violation of 42 U.S.C. § 3604(f)(3)(B), which is one of the provisions of the FHA which defines discrimination. *See* 42 U.S.C. §§ 3604(f)(3)(A)–(C). Section 3604(f)(2) of the FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." 42 U.S.C. § 3604(f)(2). Section 3604(f)(3)(B) further provides that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B). Mindful that Plaintiff is proceeding *pro se*, the Court construes Plaintiff's first claim as asserting a violation of 42 U.S.C. § 3604(f)(2). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

"To state a prima facie case of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that: (1) they suffer from a handicap as defined by the FHA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Galia v. Wasatch Advantage Grp. LLC*, No. 19-cv-08156-JCS, 2021 WL 1516372, at *5 (N.D. Cal. Apr. 16, 2021) (citing *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1146-47 (9th Cir. 2003)). "An accommodation is reasonable where it would not require a fundamental alteration in the nature of the housing provider's business or impose on the landlord undue financial or administrative hardship." *Id.*

With respect to the first element, Plaintiff has shown that he is handicapped as defined by the FHA. The FHA defines "handicap" as "a physical or mental impairment which substantially limits one or more of [a] person's major life activities." 42 U.S.C. § 3602(h)(1). Here, Plaintiff submitted a letter from his Department of Veteran Affairs physician explaining that he "has experienced symptoms of obstructive lung disease that is taking a severe toll on his health." (First Mot. TRO 7:12–16, Ex. 4 to IFP, ECF No. 1-4). Plaintiff further states that he suffers from "a spinal injury causing chronic, debilitating back pain," as well as PTSD and anxiety disorder. (Compl. ¶¶ 9–10, Ex. 1 to IFP). Plaintiff has therefore satisfied the first element.

With respect to the second element, Plaintiff has also shown that he informed

Defendants of his handicap. Specifically, Plaintiff alleges that explained his "physical limitations" and health issues to Defendant Hankins when he initially requested an accommodation. (*Id.* ¶ 30). Next, with respect to the third element, Plaintiff has explained that the individualized communication and assistance in managing his housing status that he requested was necessary for his use and enjoyment of his dwelling because his disabilities "physically barred him from participating in chaotic, crowded public tenant meetings." (*Id.* ¶ 45). Further, the Court concludes that the accommodation requested by Plaintiff was reasonable given that he asked for little more than a direct line of communication with Defendants and assistance in his relocation. Finally, with respect to the fourth element, Plaintiff has also alleged that Defendants refused his accommodation request. (*Id.* ¶ 46).

A showing of likelihood of success on the merits "requires more than a mere possibility that relief will be granted," *Nken v. Holder*, 556 U.S. 418, 420 (2009), and generally, mere allegations are insufficient. *See, e.g.*, *Leskinen v. United States Dep't of Agric.*, No. 2:18-cv-0453-TLN-KJN PS, 2018 WL 3014149, at *3 (E.D. Cal. June 14, 2018), *report and recommendation adopted*, No. 2:18-cv-0453-TLN-KJN PS, 2018 WL 4441062 (E.D. Cal. Sept. 14, 2018). However, courts in this Circuit have concluded that the "serious questions" prong of the *Cottrell* test was satisfied based solely on allegations in the plaintiff's complaint. *See, e.g.*, *Wainwright v. Fed. Nat'l Mortg. Ass'n*, No. CV-16-04387-PHX-SPL, 2016 WL 10771299, at *2 (D. Ariz. Dec. 20, 2016). Here, the Court concludes that Plaintiff's allegations show that there are at least serious questions going to the merits of his first claim. Namely, whether Plaintiff's requested accommodation—individualized communication and assistance in managing his housing status—is necessary to afford Plaintiff an equal opportunity to use and enjoy his dwelling. Accordingly, the Court finds that Plaintiff has satisfied the first factor of the *Cottrell* test and turns next to Plaintiff's likelihood of irreparable harm.

///

**B. Plaintiff has Shown a Likelihood of Irreparable Harm**

The Court finds Plaintiff has shown that "irreparable harm is likely to result in the absence of the injunction." *Cottrell*, 632 F.3d at 1135. Absent an injunction, Plaintiff will be forced to relocate to a different unit with no assistance from Defendants. (*See* Compl. ¶¶ 30–31, Ex. 1 to IFP). Plaintiff explains that relocation would constitute a "disruption of his medical stability" and the loss of "a stabilized, accessible, and smoke-free environment." (Mot. TRO 2:9); (First Mot. TRO 3:3–7, Ex. 4 to IFP). Further, because Plaintiff's lease expires on September 30, 2026, it is not clear that he will ever be able to return to his current unit. (Compl. ¶ 7, Ex. 1 to IFP). Other courts in this Circuit have found a likelihood of irreparable harm in similar circumstances. For example, in *Smith v. Brown*, the district court found that plaintiffs "who suffer from a laundry list of ailments and who are all of advanced age" would be irreparably harmed if forced to move from the home of their choosing, primarily because relocation would have caused the plaintiffs "to suffer physical and mental trauma." No. C10-1021 MJP, 2010 WL 3120203, at *6 (W.D. Wash. Aug. 9, 2010). Compounding that harm was the reality that the plaintiffs' home would "forever be lost for [their] use and enjoyment" absent an injunction. *Id.* at *7. Here, given that Plaintiff will likely suffer mental and physical trauma if forced to relocate, will likely be unable to return to his current unit, and that Defendants have refused to offer Plaintiff assistance during the relocation, the Court finds that Plaintiff has shown a likelihood of irreparable harm in the absence of an injunction.

**C. The Balance of Hardships Tips Sharply in Plaintiff's Favor**

The Court next finds that the balance of hardships "tips sharply towards" Plaintiff and supports the entry of a TRO. *Cottrell*, 632 F.3d at 1135. In analyzing this element, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations omitted). Here, as explained above, Plaintiff faces a likelihood of irreparable harm if forced to relocate

from his current apartment without a reasonable accommodation, as he will likely endure physical and mental trauma compounded by his current disabilities. Conversely, Defendants may suffer, at most, a delay of their planned renovation to Plaintiff's current apartment. Further, the Court notes that Plaintiff may relocate from his current unit in the near future if provided with a reasonable accommodation under the FHA. Accordingly, because the harm Plaintiff faces from relocation far outweighs the delay Defendants may face, the Court finds that this factor weighs in favor of granting the injunction.

**D. An Injunction is in the Public Interest**

Finally, the Court finds that the public interest weighs in favor of granting the TRO. While the balance of the equities factor focuses on the parties, "[t]he public interest inquiry primarily addresses impact on non-parties." *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931–32 (9th Cir. 2003) (citations omitted). Plaintiff here seeks to preserve the status quo pending merits review of, among others, his claim for reasonable accommodation under the FHA, 42 U.S.C. § 3604(f)(2). In the FHA itself, Congress declared that "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Indeed, courts have "emphatically declared" that the public interest is served by the effective enforcement of the FHA. *See Johnson v. Macy*, 145 F. Supp. 3d 907, 921 (C.D. Cal. 2015) (collecting cases); *see also United States v. Com. of Puerto Rico*, 764 F. Supp. 220, 225 (D.P.R. 1991) (emphasizing "the public interest that all citizens have in seeing vigorous enforcement of civil rights legislation like the Fair Housing Act" in concluding that "the public interest weighs heavily in favor of a preliminary injunction"). Accordingly, in this case, where the statute authorizes injunctive relief "as the court deems appropriate" to prevent violations of the FHA, the public interest is clearly served by the entry of a TRO. 42 U.S.C. § 3613(c).

Accordingly, because Plaintiff has satisfied all four factors of the *Cottrell* test, the Court

finds that the entry of a TRO is warranted.

**E. FRCP 65(c) Bond Amount and Service**

FRCP 65(c) permits the issuance of a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been unlawfully enjoined or restrained." Fed. R. Civ. P. 65(c). Here, given the temporary nature of the TRO, the minimal harm Defendants face if the TRO is granted, and Plaintiff's reduced income, the Court declines to impose a bond amount.

Finally, the Court notes that because Plaintiff is proceeding *in forma pauperis*, he is entitled to rely on the United States Marshals Service ("USMS") for service. *See* Fed. R. Civ. P. 4(c)(3).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order, (ECF No. 4), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants are **ENJOINED** from taking any action to relocate Plaintiff from Apartment 1115 and from initiating eviction proceedings against Plaintiff due to his refusal to relocate.

**IT IS FURTHER ORDERED** that Defendants shall show cause before the United States District Court, District of Nevada, which is located at 333 Las Vegas Blvd. South, Las Vegas, Nevada 89101, Court Room No. 7D, on August 5, 2026, at 4 P.M., why an order should not be entered granting Plaintiff a **PRELIMINARY INJUNCTION** in the above form.

**IT IS FURTHER ORDERED** that Defendants' answering papers shall be filed with the Court and served on Plaintiff on or before July 29, 2026, and that Plaintiff shall file and serve any reply no later than August 5, 2026, at 4 P.M.

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send the following to the USMS for service:

- The summons issued to Defendants filed at ECF No. 7.
- A copy of Plaintiff's Complaint filed at ECF No. 1-1.
- A copy of this Order.

**IT IS FURTHER ORDERED** that this restraining order takes effect immediately and shall remain in effect pending the above show cause hearing or further Order of this Court.

**DATED** this 22 day of July, 2026.

Gloria M. Navarro, District Judge
United States District Court